UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOHN PENA,**

    *Plaintiff*,

v.                                                 Case No. 5:24-CV-00199-JKP

**ATASCOSA COUNTY, CITY OF PLEASANTON,**

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Atascosa County and Defendant City of Pleasanton, respectively. *ECF Nos.23, 25*. Plaintiff John Pena filed Responses to each Motion, and Defendants filed Replies to the respective Responses. *ECF Nos. 27, 28, 29, 31*. Upon consideration, the Court construes Atascosa County's Motion to Dismiss as a Partial Motion to Dismiss and the Motion is granted as to Pena's disability discrimination and retaliation causes of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq. ECF No. 25*. City of Pleasanton's Motion to Dismiss is denied. *ECF No. 23*.

### BACKGROUND

In February 2024, Plaintiff John Pena ("Pena"), proceeding *pro se*, filed suit against his former employers Defendants Atascosa County and City of Pleasanton. *ECF No. 1*. Subsequently Pena obtained counsel and amended his Complaint twice. *ECF Nos. 17, 22*. The relevant facts, taken in the light most favorable to Pena, are as follows.

### I. Pena's Employment with Atascosa County

Pena began working for Atascosa County on February 1, 2022, as a Vet Technician. *ECF No. 22 at 2*. Pena alleges his job responsibilities were cleaning kennels, euthanizing animals, and providing food and water. *Id. at 3*. Pena's immediate Supervisors were Sabrina Steenbeke ("Steenbecke"), Kennel Manager, and Chief Henry Dominguez ("Dominguez"), Director of Atascosa County Animal Control. *Id. at 3*. Pena's causes of action asserted against Atascosa County concern the time period between June 13, 2022, to May 5, 2023, wherein Pena alleges Dominguez created a hostile work environment and subjected him to harassment and retaliation. *Id. at 4*.

Alleged instances of harassment and retaliation include, among other things: Dominguez accusing Pena of having "a whistleblower mentality" and an affair with Steenbeke; Dominguez comparing Pena's personality to that of a "Murder/Suicide Criminal;" Dominguez confronting Pena; Dominguez ignoring Pena's complaints; Dominguez interrogating Pena; Dominguez threatening to terminate Pena; and Dominguez verbally accosting Pena. *Id. at 2–13*. Pena further alleges Dominguez created a hostile environment by, among other things, engaging in favoritism and not subjecting two other Vet Technicians to the same treatment. *Id. at 3*.

Pena suffers from Post Traumatic Stress Disorder ("PTSD"), anxiety and depression. *Id. at 2*. To address "panic attacks, low patience, and occasional outbursts at home," on August 19, 2022, Pena called in sick to work and contacted MDLive. *Id. at 5*. Pena alleges he was "prescribed Sertraline/Zoloft 50mg once daily." *Id. at 5*. On August 30, 2022, Pena met with Steenbeke and "discussed his new medications." *Id. at 5*. "Steenbeke disclosed she had discussed this matter with [] Dominguez and suggested to Dominguez he sit down with [Pena] to address his mental health and wellbeing." *Id. at 5*.

In November 2022, Pena began treatment with a Veterans Affairs therapist, Dr. R. Endo. *Id. at 6*. Dr. R. Endo diagnosed Pena with PTSD and prescribed Pena new medications. *Id. at 6*.

Pena alleges he disclosed his mental health issues and the fact he was taking antidepressants to Dominguez during a March 29, 2023, meeting. *Id. at 10*. Despite this, Dominguez "continued to retaliate, harass, and subject [Pena] to a hostile working environment." *Id. at 10*. Pena believed Dominguez was going to terminate him and "in the interest of his mental health and welfare" Pena began seeking other employment. *Id. at 10*. Steenbeke recommended Pena take a position offered to her with City of Pleasanton. *Id. at 10*.

On May 5, 2023, Pena received a job offer from City of Pleasanton for the position of Kennel Manager. *Id. at 11*. The next day, on May 6, 2023, Pena submitted his two weeks' notice to Dominguez. *Id. at 11*. Dominguez informed Pena he was no longer needed and notified him of being terminated effective immediately. *Id. at 11*. Dominguez also informed Pena he would be paid by Atascosa County for the remaining two weeks following his resignation. *Id. at 11*.

## II. Pena's Employment with City of Pleasanton

Pena began working for City of Pleasanton on May 23, 2023, as a Kennel Manager. *ECF No. 22 at 12*. Pena alleges his job responsibilities were to train and supervise Kennel Technician Eydie Groenke and Animal Control Officer Leandro Garcia, assist the shelter employees in their performance, conduct monthly departmental meetings, handle adoptions and owner reclaims, and make euthanasia decisions. *Id*. Pena's cause of action asserted against City of Pleasanton concerns Pena's termination after posting a TikTok video on August 3, 2023, that detailed "his work experience with [] Atascosa County[,] the extent of animal cruelty[,] and his efforts to advocate on behalf of animals who were being improperly euthanized." *Id. at 15*.

Pena alleges given his large number of followers on TikTok Victoria Solis ("Solis"), City of Pleasanton's Human Resources Director, discussed with Pena "how his following on TikTok would be useful in helping to get dogs adopted and approved [Pena's] posting on TikTok." *Id. at 12*. Specifically, Solis gave Pena the authority to use TikTok as long as Pena "did not ever mention [City of Pleasanton's] name nor show [Pena's] uniform." *Id. at 12*.

Following these events, Pena alleges on August 3, 2023, he "engaged in protected speech when he posted a video on TikTok [] detailing his personal experience while employed with Atascosa County and the animal cruelty at that facility." *Id. at 13*. Pena further alleges he was not in a City of Pleasanton uniform when posting the TikTok video and "the video was posted from his home[,] on his personal computer[,] as previously agreed." *Id. at 13*.

The next day, on August 4, 2023, Solis contacted Pena and informed him his TikTok video violated City of Pleasanton's social media policy. *Id at 13–14*. Solis further informed Pena if he did not remove his TikTok video it would result in immediate termination. *Id. at 14*. In response, Pena "disclosed to Solis that her request to remove his TikTok video was against his moral code [and] freedom of speech, and [he] would see if [] City of Pleasanton decided to terminate him." *Id at 14*. Thereafter, "[Pena] received a telephone call from [] City of Pleasanton's Public Works Director, David Alviso[,] informing him [] that his employment with [] City of Pleasanton was terminated as of August 4, 2024." *Id. at 14*.

As a result, Pena filed suit against Defendants Atascosa County and City of Pleasanton. Against Atascosa County, Pena asserts causes of action for (1) "Title VII Employment Discrimination;" (2) "Retaliation and Hostile Work Environment;" (3) "Harassment;" (4) "Disability Discrimination;" and (5) "Disparate Treatment Discrimination." *ECF No. 22. at 18–19*. Against City of Pleasanton, Pena asserts a single cause of action for First Amendment retaliation. *Id. at 19*.

## 12(b)(6) LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.; see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998).

In assessing a Motion to Dismiss under Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## ANALYSIS

### I. Pena's Causes of Action Against Atascosa County

Pena's Second Amended Complaint is not completely clear on the statute, or statutes, he alleges Atascosa County violated. *ECF No. 22*. On the first page of his Second Amended Complaint, Pena asserts his disability discrimination cause of action against Atascosa County "is brought pursuant to Disability in violation of the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964,"[1] and the basis for his Retaliation cause of action against Atascosa County is violation of "42 U.S. Code § 2000e–3 and Title VII of the Civil Rights Act of 1964."[2] *Id. at 1*. Pena asserts no other statutory authority for his causes of action until the final pages of his Second Amended Complaint wherein Pena lists the following causes of action against Atascosa County: (1) "Title VII Employment Discrimination;" (2) "Retaliation and Hostile Work Environment;" (3) "Harassment;" (4) "Disability Discrimination;" and (5)" Disparate Treatment Discrimination." *Id. at 18–19*.

As to the "Title VII Employment Discrimination" cause of action, Pena asserts, confusingly, the conduct of Atascosa County "constitutes a violation of the Equal Employment Opportunity Act's prohibitions of discrimination based upon his disability of PTSD."[3] *Id. at 18*. Regarding Pena's "Retaliation and Hostile Work Environment," "Harassment," "Disability Discrimination," and "Disparate Treatment Discrimination" causes of action, however, Pena does not assert violation of any statutory authority. *Id.*

---

[1] Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2. Disability, however, is not a protected category under Title VII.
[2] U.S.C. § 2000e-3 is part of Title VII of the Civil Rights Act of 1964, which is codified in Volume 42 of the United States Code.
[3] The Equal Employment Opportunity Act ("EEOA") does not give rise to a private cause of action. Rather, the EEOA was enacted primarily to establish mechanisms allowing the Equal Employment Opportunity Commission to better enforce civil rights protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Complicating matters further, while Pena does not explicitly assert a cause of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), in his Second Amended Complaint, he does list a "Disability Discrimination" cause of action, and Atascosa County does argue Pena's causes of action would fail under the ADA in its Motion to Dismiss. *ECF Nos. 22, 25, 29*.

When Pena initially filed suit against Atascosa County, he proceeded *pro se*. *ECF No. 1*. Subsequently Pena obtained counsel and amended his Complaint twice. *ECF Nos. 17, 22*. Despite this, it is apparent to the Court Pena's counsel made minimal effort to clarify the causes of action Pena asserts against Atascosa County. *Compare ECF Nos. 1, 17, 22*.

The Court must emphasize Pena's counsel's Federal Rule of Civil Procedure 11 ("Rule 11") obligations. Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information.

Fed. R. Civ. P. 11(b). Thus, "[a] signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the doc-

ument is well grounded in both . . ." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542 (1991). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Id*. at 546. The rule's purpose is to bring home to the signer his responsibility to "validate the truth and legal reasonableness of the papers filed." *Id*. at 547 (quoting *Pavelic & LeFlore v. Marvel Entertainment Grp.*, 493 U.S. 120, 126 (1989)).

Accordingly, the Court warns Pena's counsel while providing representation in this matter he shall abide by, and ensure all future filings in this matter comply with, the Local Rules for the Western District of Texas and Federal Rules of Civil Procedure and shall be bound by said rules.

It is also apparent to the Court while Atascosa County's Motion to Dismiss appears generally directed at Pena's entire Second Amended Complaint it fails to address each of Pena's causes of action. *ECF Nos. 22, 25*. Federal Rule of Civil Procedure 12(b)(6) is not a judicial screening mechanism like 28 U.S.C. § 1915(e)(2) for actions commenced *in forma pauperis* or 28 U.S.C. § 1915A for actions filed by prisoners. *Cantu v. Guerra*, No. 5:20-CV-746-JKP, 2021 WL 2636017, at * 1 (W.D. Tex. June 25, 2021). Instead, it is a vehicle for a party to affirmatively seek dismissal. *Id*. Invocation of Federal Rule of Civil Procedure 12(b)(6) places the burden on the movant, Atascosa County here, to show dismissal is warranted. *Id*. As Atascosa County makes only cursory reference to the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964, without providing argument, the Court therefore will not analyze whether Pena fails to state a cause of action for disability discrimination and retaliation under those statutes. *See id. at 1,2*.

Accordingly, the Court construes Atascosa County's Motion to Dismiss as a Partial Motion to Dismiss and will consider Atascosa County's arguments that Pena's disability discrimination and retaliation causes of action should be dismissed under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, in turn.

    **A.**    **Disability Discrimination and Retaliation Under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101** ***et seq.***

Both Pena's disability discrimination and retaliation causes of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), require him to demonstrate a causal connection between the discrimination or retaliation he experienced and his alleged disability. A discrimination cause of action brought under the ADA requires a plaintiff to allege he has a disability, that he was qualified for his position, and that he suffered an adverse employment action because of his disability. *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013)). To establish a *prima facie* case of retaliation in violation of the ADA, a plaintiff must show he participated in an activity protected under the statute, his employer took an adverse employment action against him, and a causal connection exists between the protected activity and the adverse action. *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

As to his disability discrimination cause of action, in his Second Amended Complaint Pena does not allege he has a disability as defined under the ADA, he was qualified for his position, or he suffered an adverse employment action because of his alleged disability.[4] *See ECF No. 22*. Regarding how his employment with Atascosa County ended, Pena merely alleges:

> On May 5, 2025, Plaintiff received a job offer from Defendant City of Pleasanton for the position of Kennel Manager/Animal Control Officer. On May 6, 2023,

---

[4] Pena's sole mention of an adverse employment action concerns Defendant City of Pleasanton. *ECF No. 22 at 15* ("The adverse employment action (termination) taken against Plaintiff by Defendant, City of Pleasanton would deter a person of ordinary firmness from continuing to engage in the protected speech").

9

> Plaintiff submitted his two (2) weeks' notice to [] Dominguez. Plaintiff claims Dominguez informed Plaintiff he was no longer needed and directed Plaintiff to surrender his badge and uniform. Plaintiff claims Dominguez notified him of being terminated effective immediately; and Plaintiff would be paid by [] Atascosa County for the remaining two weeks following his resignation.

*ECF No. 22 at 11*. Without more information, even assuming Pena had properly pleaded he has a disability as defined under the ADA, he was qualified for his position, and he suffered an adverse employment action in the form of being terminated (as opposed to voluntarily resigning his position), Pena cannot avoid dismissal as he does not allege a causal connection between his termination and his alleged disability. *Olivarez*, 997 F.3d at 601 (affirming dismissal pursuant to Rule 12(b)(6) where plaintiff "failed to sufficiently allege an adverse employment action *because of* disability") (emphasis in original)).

To the extent Pena attempts to remedy the deficiencies of his Second Amended Complaint in his Response to Atascosa County's Motion to Dismiss, "the court may not go outside the complaint." *Norman v. Northland Grp.*, 495 F. App'x 425, 426 (5th Cir. 2012). "'It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.'" *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013). In Pena's Response to Atascosa County's Motion to Dismiss, for example, Pena alleges for the first time:

> Plaintiff has demonstrated that he is disabled and established a claim within the definition of the ADA, that he was qualified for his job of Vet Technician.
>
> . . .
>
> Plaintiff is disabled and suffers from PTSD, and comes within the ADA's definition of disability.

*ECF No. 22 at 14*. Pena cannot use his Response to Atascosa County's Motion to Dismiss as a backdoor to add allegations he did not plead in his Second Amended Complaint. *See*, *e.g.*, *McDavid v. Hous. Indep. Sch. Dist.*, No. H-21-993, 2021 WL 4555241, at *4 (S.D. Tex. Oct. 5,

2021). Accordingly, because Pena failed to satisfy all three prongs for a disability discrimination cause of action under the ADA, this cause of action is dismissed.

As to his Retaliation cause of action, in its Motion to Dismiss Atascosa County argues Pena's Second Amended Complaint does not address whether he participated in an activity protected under the ADA, whether Atascosa County took an adverse employment action against him, and whether a causal connection exists between the protected activity and the adverse action. *ECF No. 25 at 11*. In his Response, Pena argues he has established a *prima facie* case of retaliation under the ADA. *ECF No. 29 at 14*. For the following reasons, the Court disagrees with Pena.

In his Second Amended Complaint, Pena does not allege he participated in an activity protected under the ADA. *See ECF No. 22*. Protected activity includes "oppos[ing] any act or practice made unlawful by [the ADA]." *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876 (5th Cir. 2020) (citing *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008) (per curiam). To satisfy this requirement, Pena must show he had a "reasonable belief that the employer was engaged in unlawful employment practices" under the ADA. *Id*. (citing *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 313 (5th Cir. 2016) (per curiam). In other words, Pena would need to show he reasonably believed someone at Atascosa County engaged in activity "unlawful *under the ADA* in order to have engaged in a 'protected' activity." *Id*. (citing *DeBlanc*, 640 F. App'x at 313).

Pena merely alleges "the retaliation was based on his disclosures made to supervisor Steenbeke and her discussion with Dominguez regarding claims of being treated unfairly." *ECF No. 22 at 8*. The Court assumes Pena references the August 20, 2022, meeting between Pena and Steenbeke described earlier in his Second Amended Complaint. *Id. at 5–6*. During the August

20, 2022, meeting, Pena alleges he "discussed his new medications" with Steenbeke and "Steenbeke disclosed she had discussed this matter with [] Dominguez and suggested to Dominguez he sit down with [Pena] to address his mental health and wellbeing." *Id. at 5*.

Giving Pena every benefit of the doubt at the pleading stage, these allegations do not set forth a factual basis Pena engaged in a protected activity under the ADA such as opposing a discriminatory practice, complaining of discrimination to an employer or to a government agency, or participating in an investigation of discrimination. *Coleman v. Ark Contracting Servs., LLC*, No. 3:21-CV-2553-N, 2023 WL 159777 at * 4 (N.D. Tex. Jan. 11, 2023). Without more information, even assuming Pena is alleging disclosure of his disability by Steenbeke to Dominguez, the Fifth Circuit holds individuals do not engage in protected activity under the ADA by merely complaining of disclosure of medical information because "disclosure . . . is not protected under the ADA." *St. John*, 299 F. App'x at 309. The Court will not rely on further speculation to reach unwarranted factual inferences or conclusions in Pena's favor as courts do not assume or insert allegations into complaints. And again, to the extent Pena attempts to remedy the deficiencies of his Second Amended Complaint in his Response to Atascosa County's Motion to Dismiss, his "complaint may not be amended by briefs in opposition to a motion to dismiss." *Roebuck*, 515 F. App'x at 280. Thus, Pena fails to satisfy the first prong of his *prima facie* case.

In his Second Amended Complaint, Pena also does not allege Atascosa County took an adverse employment action against him or a causal connection exists between any protected activity and the adverse action. *See ECF No. 22*. An employee's resignation can be an adverse employment decision if it constitutes a constructive discharge. *See Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). A constructive discharge occurs when the "employer deliberately makes an employee's working conditions so intolerable" that the employee's resignation is invol-

untary. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 802 (5th Cir. 2018) (quoting *Keelan v. Majesco Software*, Inc., 407 F.3d 332, 342 (5th Cir. 2005)). In other words, the circumstances must be so unbearable that a reasonable employee would feel compelled to resign. *Brown*, 207 F.3d at 782.

As the Court already discussed, however, Pena merely alleges he "received a job offer from Defendant City of Pleasanton;" "submitted his two (2) weeks' notice to [Atascosa County's] Chief Henry Dominguez;" "Dominguez informed [him] he was no longer needed . . . [and] notified him of being terminated effective immediately;" and Dominguez informed him "[he] would be paid by [] Atascosa County for the remaining two weeks following his resignation." *ECF No 22 at 11*. To the extent Pena's submissions can be read to attempt to allege a constructive discharge theory, Pena has not alleged Atascosa County made his working conditions so intolerable that a reasonable employee would feel compelled to resign. Thus, Pena fails to satisfy the second prong of his *prima facie* case. Even assuming Pena suffered an adverse employment action in the form of being terminated (as opposed to voluntarily resigning his position), Pena establishes no causal connection between any protected activity and being terminated, thereby failing to satisfy the third prong of his *prima facie* case as well.

Accordingly, because Pena failed to satisfy all three prongs for a retaliation cause of action under the ADA, this cause of action is dismissed.

## II. Pena's First Amendment Retaliation Cause of Action Against City of Pleasanton

As to his First Amendment retaliation cause of action, in its Motion to Dismiss City of Pleasanton argues Pena "does not plead any facts that demonstrate his video was posted by him as a citizen rather than a government employee, or that the video involved matters of public concern," therefore Pena fails to state a cause of action under 42 U.S.C. § 1983 ("Section 1983").

*ECF No. 23 at 4*. In the alternative, City of Pleasanton argues Pena failed to exhaust administrative remedies prior to filing suit. *Id. at 6–7*. In his Response, Pena argues he spoke as a citizen when he published his video and the video involved matters of public concern, namely the inhumane treatment of animals by Atascosa County. *ECF No. 27 at 11–13*. Pena also argues his Section 1983 cause of action does not require he exhaust administrative remedies prior to filing suit. *Id. at 1–2*. For the following reasons, the Court agrees with Pena.

    A.    **42 U.S.C. Section 1983**

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). To establish First Amendment retaliation under Section 1983, Pena, as a public employee, must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015).

Neither party disputes Pena's termination by City of Pleasanton constitutes an adverse employment action, the first prong, or Pena's speech—specifically, Pena's August 3, 2023, Tik-Tok video—precipitated the adverse employment action, the fourth prong. As City of Pleasanton provides no argument related to the third prong, only the second prong—whether Pena spoke as a citizen on a matter of public concern—is in dispute.

The Court will assume, without deciding, Pena spoke on a matter of public concern as the only argument City of Pleasanton provides is "Plaintiff does not plead any facts that demonstrate . . . that the video involved matters of public concern." *ECF No. 23 at 4*. The Court therefore will

14

not analyze whether Pena alleged facts sufficient to satisfy the pleading requirement Pena spoke on a matter of public concern. *See Cantu*, 2021 WL 2636017, at * 1.

The question whether Pena spoke on a matter of public concern may be separated from whether Pena spoke as a citizen, however. *Gibson v. Kilpatrick*, 838 F.3d 476, 481 n. 1 (5th Cir. 2016). The Court therefore will consider City of Pleasanton's arguments Pena has not alleged facts sufficient to satisfy the pleading requirement he spoke as a citizen in turn.

1. **Whether Pena Spoke as a Citizen**

Regarding the second prong of a Section 1983 First Amendment retaliation cause of action, the Court must determine "whether the plaintiff was speaking as a citizen . . . or whether the plaintiff was speaking in furtherance of the duties of his or her employment." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Here, City of Pleasanton alleges Pena's August 3, 2023, Tik-Tok video was made "pursuant to his City job duties." *See ECF No. 23*.

In determining whether speech is made in furtherance of a public employee's job duties, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). When speech-related "[a]ctivities [are] required by one's position or undertaken in the course of performing one's job[ ]," they are within the scope of the employee's duties. *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015) (citing *Haverda v. Hays County*, 723 F.3d 586, 598 (5th Cir.2013). In contrast, if the speech-related activities are "the kind . . . engaged in by citizens who do not work for the government," they are protected. *Id*. (citing *Garcetti*, 547 U.S. at 423).

This distinction is important because while a public employee "by necessity must accept certain limitations on his or her freedom," "public employees do not surrender all their First

15

Amendment rights by reason of their employment." *Garcetti*, 547 U.S. at 417–18. When a public employee speaks out as part of his or her job duties, or the execution or advancement of those duties, "the public employer's interest automatically outweighs the employee's, which is therefore unprotected." *Anderson v. Valdez*, 845 F.3d 580, 593 (5th Cir. 2016). The issue of whether a plaintiff speaks as an employee or citizen is a question of law for the Court to determine. *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015).

City of Pleasanton argues Pena spoke as a public employee, and not as a citizen, when he published his TikTok video because "[o]rdinary citizens have no means to participate in or to review the actions of persons performing animal control, animal shelter[,] or euthanasia duties for the City." *ECF No. 23 at 6*. While unclear, to the extent City of Pleasanton attempts to argue Pena spoke as a public employee because his TikTok video discusses his job duties, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into public employee—rather than citizen—speech." *Lane*, 573 U.S. at 240. That said, City of Pleasanton cites the Fifth Circuit's decision in *Paske v. Fitzgerald* for support. *ECF No. 23 at 6* (citing 785 F.3d 977, 984 (5th Cir. 2015)).

In *Paske*, the Fifth Circuit affirmed a district court's dismissal of a police officer's First Amendment retaliation cause of action. *Paske*, 785 F.3d at 984. In granting dismissal, the district court held the police officer spoke as a public employee, and not as a citizen, because his speech was "confined to his on-duty statements made to superior officers within the department itself regarding the department's inner workings and urging [his] direct and implied complaints and criticisms about [other officers]." *Id*. The Fifth Circuit noted "Paske was invited to the Supervisor Meeting in his role as a police officer, his attendance was part of his job, and he spoke in response to an invitation from [the Chief of Police] for job-related questions." *Id*. As City of

16

Pleasanton points out, the Fifth Circuit also noted "private citizens do not generally have the right to participate in closed-door meetings of ranking police officers." *Id*.

Unlike the police officer in *Paske,* however, Pena specifically alleges he published his TikTok video from his home, using his computer, while not in a City of Pleasanton uniform. *ECF No. 22 at 13*; *See Graziosi*, 775 F.3d at 737 (holding that police officer's Facebook posts critiquing police-department decisions was speech as a citizen). Further distinguishing this case from *Paske*, there is no allegation by the City of Pleasanton that Pena published his TikTok video while he was on-duty. *ECF No. 23*. The Court notes there is also no allegation Pena was employed as a spokesperson or public information officer for City of Pleasanton. Indeed, from the parties' submissions it is undisputed making public statements was not ordinarily within the scope of Pena's employment. *See ECF No. 22 at 12; ECF No. 23 at 6*; *see also Graziosi*, 775 F.3d at 737. For these reasons, City of Pleasanton's arguments for dismissal on this basis fail.[5]

Accordingly, the Court finds Pena alleged facts sufficient to satisfy the pleading requirement he spoke as a citizen when he published his August 3, 2023, TikTok video.

### B. Exhaustion of Administrative Remedies

In the alternative, City of Pleasanton argues Pena failed to exhaust administrative remedies prior to filing suit. *ECF No. 23 at 6–7*. As a general rule, "plaintiffs pursuing civil rights [causes of action] under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." *Porter v. Nussle*, 534 U.S. 516, 523 (2002) (citing *Patsy v. Bd. of Regents of State of Florida*, 457 U.S. 496, 516 (1982)). Where Congress explicitly provides administrative reme-

---

[5] City of Pleasanton also cites the Fifth Circuit's decision in *Dusterhoft v. City of Austin* for support. *ECF No. 23 at 4, 6* (citing No. 23-50313, 2023 WL 6785842 at * 2 (5th Cir. Oct. 13, 2023)). *Dusterhoft* is an unpublished decision, and therefore has no precedential value. The Court also does not find it persuasive as the facts in the instant case are dissimilar. *Dusterhoft*, 2023 WL 6785842 (affirming dismissal of a police officer's First Amendment retaliation cause of action based on the *Paske* Court's reasoning).

dies must be exhausted or where such intent may be inferred from the statutory scheme, however, exhaustion is required. *F.D.I.C. v. Scott*, 125 F.3d 254, 257 (5th Cir. 1997).

City of Pleasanton has not provided the Court with any positive law that explicitly or implicitly requires Pena exhaust administrative remedies before bringing his Section 1983 cause of action. *See ECF No. 23 at 7*. While City of Pleasanton cites two cases for support, the Court finds the cited cases are either distinguishable or not on point. *Id*. For example, *Fort Bend County, Texas v. Davis* addresses a Title VII cause of action and Pena does not assert a Title VII cause of action against City of Pleasanton. 587 U.S. 541 (2019). Similarly, *EPA v. EME Homer City Generation, L.P.* addresses the Good Neighbor Provision in the Clean Air Act. 572 U.S. 489 (2014). Accordingly, City of Pleasanton's arguments for dismissal on this basis also fail.

## CONCLUSION

For the reasons discussed, the Court construes Atascosa County's Motion to Dismiss as a Partial Motion to Dismiss and the Motion is granted as to Pena's disability discrimination and retaliation causes of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. *ECF No. 25*. City of Pleasanton's Motion to Dismiss is denied. *ECF No. 23*.

It is so ORDERED.
SIGNED this 27th day of January, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE